IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 129,584

STATE OF KANSAS,
*Appellee*,

v.

ZSHAVON M. DOTSON,
*Appellant*.

SYLLABUS BY THE COURT

A district court does not err in denying a postconviction motion for DNA testing after an evidentiary hearing when DNA testing would not produce exculpatory evidence.

Appeal from Wyandotte District Court; COURTNEY MIKESIC, judge. Submitted without oral argument May 21, 2026. Opinion filed July 24, 2026. Affirmed.

*Peter T. Maharry*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Kayla L. Roehler*, deputy district attorney, and *Mark A. Dupree, Sr.*, district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, C.J.: A jury found Zshavon M. Dotson guilty of first-degree premeditated murder and aggravated battery. The court sentenced him to a hard 25 life sentence. In 2025, Dotson petitioned pro se for postconviction DNA testing. After appointing counsel

1

and holding an evidentiary hearing, the district court denied the motion. This is Dotson's direct appeal from that denial. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Dotson shot and killed his friend Ronald Marks (R.J.) at the home in Kansas City where R.J. lived with his mother, Carolyn Marks. At trial, Dotson testified that R.J. and Carolyn had attempted to rob him at gunpoint. He claimed that he grabbed the barrel of the rifle R.J. was pointing at him, wrestled it away, and then had to shoot R.J. in self-defense when R.J. pulled a handgun from his waist and pointed it at Dotson. Carolyn provided a different account. She testified that Dotson and R.J. were having an argument when Dotson grabbed a rifle from the ground and R.J. tried to wrestle it away. Eventually, she claimed Dotson overpowered R.J. and shot him in cold blood. She testified that Dotson hit her with the gun during the incident.

The jury rejected Dotson's defense and found him guilty of first-degree premeditated murder for R.J.'s death and aggravated battery for the injury to Carolyn. The district court sentenced him to life without parole for 25 years for the murder conviction and 12 months' imprisonment for the aggravated battery conviction, to be served concurrently. This court affirmed Dotson's convictions in *State v. Dotson*, 319 Kan. 32, 33, 551 P.3d 1272 (2024).

On February 6, 2025, Dotson filed a pro se motion for postconviction DNA testing. In one section of his motion, he listed seven items he wanted tested: "DNA from Arsenal 7.6x39 rifle SLR #BA362974," "Ballistic comparison from Arsenal 7.6x39," "Hair and blood samples Ronald Marks and Carolyn Marks," "finger print and palm prints of Ronald Marks and Carolyn Marks," "Clothes worn on the day of the murders," "Gun residue from hands," and "Spent cartridges." In a follow up paragraph, Dotson

2

claimed he was requesting DNA testing "of the clothes worn on the day of the murders; (2) the alleged murder weapon; (3) residue from his hands; and (4) the victims' clothing. And all other weapons recovered from the murder scene." Further on, the motion indicated Dotson was requesting testing on "the so-called DNA that was on the barrel of the murder weapon." He also stated that "the testing of biological material recovered from the firearm can be compared to hair and blood sample[s] of Ronald Marks and Carolyn Marks for any possible match." He alleged that the "relevant biological samples" he wanted tested had not been subjected to DNA testing. Dotson generally argued that the testing of this material would prove he was not the initial aggressor in the shooting.

The State responded to the motion, noting that it was difficult to understand but appeared to request testing only of "the barrel of the gun." The State argued the court should deny Dotson's motion because the motion did not identify biological material on the barrel of the gun. Alternatively, the State argued that even if there was biological material on the gun that could be tested, it would not provide exculpatory evidence because Dotson admitted he handled the gun, and the presence of his DNA on a weapon he handled would not shed any light on who the initial aggressor was. It attached to its response a "property report" that claimed it established that the investigators took swabs from the trigger, pistol, and grip of the firearm, but not from the barrel.

In a supplemental brief, the State discussed some of the remaining items listed in Dotson's petition. It argued that the only items that were biological material were the "DNA from Arsenal 7.6x39 rifle SLR #BA362974" and the hair and blood samples from R.J. and Carolyn. It asserted the hair and blood samples were not in the State's possession. It did not indicate whether the "DNA from Arsenal 7.6x39 rifle SLR #BA362974" was in the State's custody or discuss it further.

3

The district court appointed counsel for Dotson and held an evidentiary hearing on the motion. At that hearing, Dotson testified that the only thing he wanted tested was "[t]he DNA on the murder weapon." He stated generally that this testing would assist him because if DNA testing had revealed that his DNA was not on the weapon or someone else's DNA was on the weapon, he might have had an alternate defense at trial. He also argued that if his fingerprints were on the barrel of the gun, that would support his self-defense theory by showing he was not the initial aggressor.

The court issued a written ruling denying the motion that followed the analytical steps this court set out in *State v. Angelo*, 316 Kan. 438, 518 P.3d 27 (2022).

Dotson filed a timely appeal.

ANALYSIS

Dotson argues the district court erred by narrowing the scope of his request for DNA testing on the gun to only the barrel of the gun. He contends the court should have ordered DNA testing on all the swabs from the gun listed in the property report. We conclude the district court did not err in denying Dotson's motion because there is no indication testing on the samples on the property report would produce exculpatory evidence.

*Standard of review*

This court applies a bifurcated standard of review to the denial of a motion for DNA testing after an evidentiary hearing. It reviews the lower court's factual findings for substantial competent evidence, viewed in the light most favorable to the prevailing party.

4

And it reviews legal conclusions based on those findings de novo. *State v. Holt*, 321 Kan. 125, 128-29, 573 P.3d 665 (2025).

*Discussion*

K.S.A. 21-2512 creates a statutory right to postconviction DNA testing under some circumstances. It provides:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder in the first degree as defined by K.S.A. 21-3401, prior to its repeal, or K.S.A. 21-5402, and amendments thereto, or for rape as defined by K.S.A. 21-3502, prior to its repeal, or K.S.A. 21-5503, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

"(b)(1) The court shall notify the prosecuting attorney of a petition made under subsection (a) and shall afford the prosecuting attorney an opportunity to respond.

(2) Upon receiving notice of a petition made under subsection (a), the prosecuting attorney shall take such steps as are necessary to ensure that any remaining biological material that was secured in connection with the case is preserved pending the completion of proceedings under this section.

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory

5

evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced."

This court has explained that this statute establishes the following three-step process:

"Step one requires the petition to sufficiently 'allege that biological material exists and satisfies the threshold requirements for testing under K.S.A. 2021 Supp. 21-2512(a).' In step two, the State 'must preserve any remaining biological material that it previously 'secured in connection with the case' and identify such biological material in its response.' At step three, '[i]f the parties agree such biological material exists, then they can proceed to argue whether testing will produce noncumulative, exculpatory evidence compelling the district court to order testing under K.S.A. 2021 Supp. 21-2512(c).' But if they disagree, 'then they can present evidence to the district court for appropriate fact-finding. In that situation, the petitioner, as the proponent of DNA testing, bears the burden to prove the existence of such biological material.' The court will make findings on whether that material exists and, if it does, will decide whether testing may produce noncumulative, exculpatory evidence." [Citations omitted.] *State v. Johnson*, 320 Kan. 402, 405, 568 P.3d 858 (2025) (citing *Angelo*, 316 Kan. at 455, 469), *cert. denied* 223 L. Ed. 2d 568 (2026).

Here, after an evidentiary hearing, the district court held generally that Dotson failed to show that the material he wanted tested met the requirements of K.S.A. 21-2512(a) or that testing would produce exculpatory results under K.S.A. 21-2512(c). More specifically, and in regard to the firearm, it ruled:

"This Court in applying the case law and statutory provisions of K.S.A. 21-2512 finds that it is the burden of the defendant to show that the item requested to be tested is to be in the actual or constructive possession of the State and the defendant is to show the existence of biological material on the item. In this matter, the State provided a 'property report' of what was still available in police or the State's custody. The State maintains, 'it does not appear that there is any DNA evidence in the State's custody or police property

relating to the barrel of the rifle.' Accordingly, this court finds that the Defendant has not met his burden to prove that the evidence related to the rifle barrel is still in the State's custody as required by K.S.A. 21-2512. Dotson failed to comply with the statutory provisions of K.S.A. 21-2512 by failing to establish the existence of biological material and that such DNA is material to the issues of this case and that the DNA swabs are still in the possession of the State. Dotson has failed to identify the specific biological material he requests to be tested and therefore Dotson's request is denied."

The court also held "even if there is biological material properly pled, it would not produce exculpatory evidence."

Dotson argues the court erred when it did not order testing on the swabs from the gun on the State's property list. He claims that the district court erroneously narrowed his request for testing on the gun to a request for testing on only the barrel or biological material from the barrel.

The State argues that the court correctly narrowed the petition to a request for testing on only the barrel of the gun. It alternatively argues that even if there was material from the gun to be tested, Dotson failed to show it would produce exculpatory results.

Dotson makes a fair argument that his motion requested testing of more than just the barrel of the gun. But it is not clear the district court narrowed the petition and considered only whether to test the barrel of the gun. The district court's order indicated that Dotson "requested DNA testing of the rifle." It discussed Dotson's testimony that he handled the gun, and it opined that "the mere presence of DNA on the rifle handled by both Dotson and the victim . . . would not establish who was the initial aggressor." It then wrote "Dotson is asking for testing to determine 'whether there is the presence of biological material to be subject to further testing' and that is not the purpose of K.S.A. 21-2512." The court ruled that Dotson failed to prove "the DNA swabs are still in the

7

possession of the State" and that "Dotson has failed to identify the specific biological material he requests to be tested." It also held that any testing would not produce exculpatory evidence.

The district court's language indicates that it did not narrow its consideration to only the barrel of the gun. Rather, it considered whether to order testing on all of the swabs taken from the rifle but denied the request after concluding none of them were in the State's custody, Dotson needed to be more specific about what kind of biological material there was to be tested, or testing was not warranted because it would not produce exculpatory results.

While the district court's opinion is not exceedingly clear, we hold it did not err when it denied testing on the swabs because there is no indication testing of the swabs from the property report may "produce noncumulative, exculpatory evidence." K.S.A. 21-2512(a), (c); see *Holt*, 321 Kan. at 129 (petitioner "must make a plausible claim that current DNA testing could provide some exculpatory evidence" to warrant testing); *Angelo*, 316 Kan. at 455 (if threshold requirements of K.S.A. 21-2512[a] are met, court shall order testing if it determines requirements of K.S.A. 21-2512[c] are met); *State v. Lackey*, 295 Kan. 816, 821-23, 286 P.3d 859 (2012) (materials must meet requirements under K.S.A. 21-2512[a] and K.S.A. 21-2512[c] to warrant testing).

Dotson presents a single argument on appeal why the testing of the swabs could produce exculpatory evidence. He claims that the testing could show R.J.'s DNA was on the trigger or Carolyn's DNA was on the gun, and that this would lend credence to his self-defense theory. He theorizes that if R.J.'s DNA is on the trigger, that supports the notion that Dotson had to defend himself because R.J. was in a position to shoot him. He adds that if Carolyn's DNA was found on the gun, that would show that he was in a fight for his life against two people, not just one.

8

Dotson's argument is unpersuasive. To be exculpatory, evidence must "tend to prove a disputed material fact." *State v. Hernandez*, 303 Kan. 609, 620, 366 P.3d 200 (2016). But the presence of R.J.'s DNA on the trigger of the rifle would tend to prove only that R.J. touched the trigger of his own rifle. The State does not dispute that R.J. owned the rifle or that he has touched the trigger of that rifle, so the presence of R.J.'s DNA on the trigger would not tend to prove a disputed material fact. With regard to Carolyn, Dotson never alleged that she touched the rifle. According to his theory of defense, Carolyn held him at gunpoint by way of a different firearm. Thus, any evidence that her DNA was found on the rifle would not tend to prove a fact material to Dotson's theory of innocence.

Because Dotson has failed to show how the district court erred in holding testing of biological material found on the gun would produce exculpatory evidence, the district court made no error in denying his motion.

The district court is affirmed.